AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Virginia

APR 23 2018

| In the Matter of the Search of | |
|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) ) ) ) ) |
| LG MODEL LG-LS676 CELLULAR PHONE, S/N: 703CYPY1371840 | |

Case No. 1:18SW229

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
LG MODEL LG-LS676 CELLULAR PHONE, S/N: 703CYPY1371840, as described in Attachment A

located in the _____ Eastern _____ District of _____ Virginia _____ , there is now concealed *(identify the person or describe the property to be seized)*:
Please see Attachment B (Items to be Seized)

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a) and 846 | Possession the Intent to Distribute a Controlled Substance |

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA/SAUSA:
Tobias Tobler/Troy Edwards, Jr.

_____
*Applicant's signature*

Rebecca Tomlinson, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 4/23/18

/s/
Theresa Carroll Buchanan
United States Magistrate Judge
*Judge's signature*

City and state: Alexandria, Virginia

Hon. Theresa Carroll Buchanan, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT A

The property to be searched is an LG Model LG-LS676 cellular phone, serial number 703CYPY1371840 (the "Device"). The Device is currently located at the Annandale DEA Field Office at 6715 Little River Turnpike, Suite 303, Annandale, Virginia 22003.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

12

ATTACHMENT B

All records on the device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a) and 846 (conspiracy to distribute a controlled substance), and involve LARRY WAYNE DAVIS and CURTIS DUPREE, including, but not limited to, the following:

a.      records relating to the ordering, purchase or possession of controlled substances and/or firearms;

b.      types, amounts, and prices of drugs and/or firearms trafficked as well as dates, places, and amounts of specific transactions;

c.      any information related to sources and/or customers of drugs and/or firearms (including names, addresses, phone numbers, or any other identifying information);

d.      any information recording DAVIS's or DUPREE's schedule or travel from July 2017 to the present;

e.      all bank records, checks, credit card bills, account information, and other financial records;

f.      records evidencing the obtaining, secreting, transfer, concealment, storage and/or expenditure of money or other assets including, but not limited to, firearms and/or controlled substances;

g.      photographs, in particular, photographs of firearms and/or controlled substances and photographs of individuals possessing firearms and/or controlled substances and photographs showing the association of individuals;

h.      evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

13

saved usernames and passwords, documents, and browsing history;

        i.      records of Internet Protocol addresses used; and

        j.      records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

      As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division



APR 2 3 2018

|                                          |                    |
| :--------------------------------------- | :----------------- |
| IN THE MATTER OF THE SEARCH OF AN        | No. 1:18-SW-229     |
| LG MODEL LG-LS676 CELLULAR PHONE,        |                    |
| S/N: 703CYPY1371840                      |                    |

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Rebecca Tomlinson, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1.     I have been a special agent with the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") since August 2007. I am assigned to the Office of Field Operations for the Washington Field Division-East, in Washington, D.C. I have been involved in numerous investigations into illegal firearms trafficking, possession of firearms by prohibited persons, and distribution of controlled substances. While conducting and participating in these investigations, I have prepared and executed search warrants resulting in the seizure of narcotics, contraband, firearms, and proceeds and assets of illicit activities. I have also conducted mobile and static surveillance, interviewed and debriefed confidential informants and witnesses, and participated in arrests.

2.     I submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search.

3.     Based upon the facts set forth herein, I submit there is probable cause to believe that LARRY WAYNE DAVIS and CURTIS DUPREE have engaged in the distribution of controlled substances, in violation of 21 U.S.C. §§ 841(a) and 846, and that the Device, as described in Attachment A, contains evidence, contraband, fruits, and/or instrumentalities of these criminal

activities, as described in Attachment B.

4.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICE TO BE EXAMINED

5.      The property to be searched is one (1) LG Model LG-LS676 cellular phone, serial number 703CYPY1371840 (the "Device," further detailed in Attachment A). The Device is currently located at the Annandale DEA Field Office at 6715 Little River Turnpike, Suite 303, Annandale, Virginia 22003.

6.      The applied-for warrant would authorize the forensic examination of the Device for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7.      Since approximately July 2017, law enforcement has been investigating the drug distribution activities of LARRY WAYNE DAVIS in the Eastern District of Virginia and elsewhere. As part of this investigation, the Drug Enforcement Administration ("DEA") and ATF have conducted controlled, monitored purchases of narcotics from DAVIS through the use of a confidential informant (the "CI").[1]

8.      On April 19, 2018, the CI placed a recorded call to DAVIS. The CI arranged to purchase $4800 worth of heroin from DAVIS for $120 per gram of heroin. The CI asked DAVIS if he could meet the CI in Virginia and DAVIS told the CI, "We'll try." DAVIS agreed to meet the CI

in the 2600 block of South Four Mile Run Drive in Arlington County, Virginia, in the Eastern District of Virginia. According to the CI, in an unrecorded call between DAVIS and the CI, DAVIS said that he did not have the heroin on him. DAVIS offered instead to pick up the CI at the pre-arranged Virginia location and take him into Washington D.C. to his guy to get the heroin. The CI rejected the offer. DAVIS explained that he did not have the money to front to his guy for the heroin. The CI again rejected, explaining that he needed to meet in Virginia. In a subsequent recorded call, DAVIS told the CI, "I'm coming with him. I'm coming with it."

9.      On April 19, 2018, the CI met with law enforcement at a neutral location. Law enforcement officers searched the CI and found no contraband. ATF provided the CI with $4800 of pre-recorded ATF funds. The CI drove to the agreed-upon location and parked the CI vehicle. DAVIS was observed driving the TARGET VEHICLE to the target location with an individual later identified as CURTIS DUPREE in the front passenger seat. DAVIS parked his vehicle next to the CI vehicle, and DAVIS entered the front passenger seat of the CI vehicle. DAVIS provided the CI with approximately 40 grams of suspected heroin, and the CI provided DAVIS with $4800 of pre-recorded ATF funds. DAVIS exited the CI vehicle, reentered his vehicle, and began to drive out of the area. Law enforcement conducted a traffic stop, and DAVIS and DUPREE were placed in custody.

10.      During a search of DAVIS's person, law enforcement recovered $1200 of pre-recorded ATF funds from DAVIS's pocket. During a search of DUPREE, law enforcement recovered $3600 of pre-recorded ATF funds from DUPREE's pocket. Investigators observed a plastic bag in DAVIS's vehicle on the floor of the front passenger seat with suspected heroin dumped

---

[1] The CI has provided information to ATF and DEA agents that agents have corroborated by independent means. The CI's information has not been found to be false or misleading. For

out on the floor.

11.     Law enforcement also seized two cellular telephone devices, including the Device, from on or around the middle console of DAVIS's vehicle.

12.     At the conclusion of the purchase, law enforcement recovered the suspected heroin purchased by the CI. Investigators searched the CI and CI vehicle for contraband with negative results. The suspected heroin weighed approximately 41 grams with packaging.

13.     The Device is currently in storage at the Annandale DEA Field Office at 6715 Little River Turnpike, Suite 303, Annandale, Virginia 22003. Based on my training, experience and knowledge obtained from other law enforcement officers, your Affiant knows that the Device has been stored in a manner in which its contents are, to the extent material to this investigation, in substantially the same state as they were when the device first came into the possession of the DEA.

USE OF CELLULAR TELEPHONES/STORAGE MEDIA BY DRUG TRAFFICKERS

14.     Based on my training, experience, and participation in narcotic and drug-related investigations, and my knowledge of this case, I know that:

a.     It is common for individuals engaged in the distribution of controlled substances to use telephonic communications, both cellular (to include voice and text messages) and hard line, to further their criminal activities by coordinating the distribution of narcotics, illegal proceeds of narcotics trafficking, and other efforts of co-conspirators;

b.     Individuals engaging in the distribution of controlled substances use cellular telephones and cellular telephone technology to communicate and remain in

these reasons, I consider the CI to be reliable.

constant contact with customers and the sources of those controlled substances;

c.    Individuals who engage in the distribution of controlled substances use cellular telephones to exchange information with customers and/or source(s) of supply through text messaging and instant messaging in addition to direct telephone conversations.  It is also common for narcotics traffickers to send photographs and videos as exchange of information with customers and/or source(s) of supply; and

d.    Individuals who engage in the distribution of controlled substances frequently maintain information, personal records, photographs, and documents in an electronic format on computers and/or smart phones.

### TECHNICAL TERMS

15.    Based on my training and experience, I use the following technical terms to convey the following meanings:

a.    Wireless telephone: A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still

5

photographs and moving video; storing and playing back audio files; storing

dates, appointments, and other information on personal calendars; and accessing

and downloading information from the Internet.  Wireless telephones may also

include global positioning system ("GPS") technology for determining the

location of the device.

b.      Digital camera:  A digital camera is a camera that records pictures as digital

picture files, rather than by using photographic film.  Digital cameras use a

variety of fixed and removable storage media to store their recorded images.

Images can usually be retrieved by connecting the camera to a computer or by

connecting the removable storage medium to a separate reader.  Removable

storage media include various types of flash memory cards or miniature hard

drives.  Most digital cameras also include a screen for viewing the stored images.

This storage media can contain any digital data, including data unrelated to

photographs or videos.

c.      Portable media player:  A portable media player (or "MP3 Player" or iPod) is

a handheld digital storage device designed primarily to store and play audio,

video, or photographic files.  However, a portable media player can also store

other digital data.  Some portable media players can use removable storage

media.  Removable storage media include various types of flash memory cards or

miniature hard drives.  This removable storage media can also store any digital

data.  Depending on the model, a portable media player may have the ability to

store very large amounts of electronic data and may offer additional features such

as a calendar, contact list, clock, or games.

6

d.     GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e.     PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal

7

computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f.      IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

g.      Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

16.     Based on my training, experience, and research, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

ELECTRONIC STORAGE AND FORENSIC ANALYSIS

17.    Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

18.    *Forensic evidence.*  As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

        a.    Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

        b.    Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

        c.    A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

        d.    The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a

9

review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.      Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

19.      *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

20.      *Manner of execution.* Because this warrant seeks only permission to examine a device already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

10

## CONCLUSION

21.    I submit that this affidavit supports probable cause for a search warrant authorizing

the examination of the Device described in Attachment A to seek the items described in Attachment

B.

Respectfully submitted,

Special Agent Rebecca Tomlinson
Bureau of Alcohol, Tobacco, Firearms, and Explosives

Sworn and subscribed to before me the 23 day of April, 2018
                                                                      /s/
                                                            Theresa Carroll Buchanan
                                                            United States Magistrate Judge

The Honorable Theresa Carroll Buchanan
United States Magistrate Judge

## ATTACHMENT A

The property to be searched is an LG Model LG-LS676 cellular phone, serial number 703CYPY1371840 (the "Device"). The Device is currently located at the Annandale DEA Field Office at 6715 Little River Turnpike, Suite 303, Annandale, Virginia 22003.

This warrant authorizes the forensic examination of the Device for the purpose of identifying the electronically stored information described in Attachment B.

## ATTACHMENT B

All records on the device described in Attachment A that relate to violations of 21 U.S.C. §§ 841(a) and 846 (conspiracy to distribute a controlled substance), and involve LARRY WAYNE DAVIS and CURTIS DUPREE, including, but not limited to, the following:

a.      records relating to the ordering, purchase or possession of controlled substances and/or firearms;

b.      types, amounts, and prices of drugs and/or firearms trafficked as well as dates, places, and amounts of specific transactions;

c.      any information related to sources and/or customers of drugs and/or firearms (including names, addresses, phone numbers, or any other identifying information);

d.      any information recording DAVIS's or DUPREE's schedule or travel from July 2017 to the present;

e.      all bank records, checks, credit card bills, account information, and other financial records;

f.      records evidencing the obtaining, secreting, transfer, concealment, storage and/or expenditure of money or other assets including, but not limited to, firearms and/or controlled substances;

g.      photographs, in particular, photographs of firearms and/or controlled substances and photographs of individuals possessing firearms and/or controlled substances and photographs showing the association of individuals;

h.      evidence of user attribution showing who used or owned the Device at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks,

13

saved usernames and passwords, documents, and browsing history;

        i.      records of Internet Protocol addresses used; and

        j.      records of Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage and any photographic form.